IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DELBERT PROCTOR,**
        **Plaintiff,**

v.                                          **CIVIL ACTION NO. 1:04CV231**
                                                    (Stamp)

**JO ANNE B. BARNHART,**
**COMMISSIONER OF**
**SOCIAL SECURITY,**
        **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The matter is awaiting decision on cross Motions for Summary Judgment and Plaintiff's Motion for Remand and has been referred to the undersigned United States Magistrate Judge for submission of a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B).

### I. Procedural History

Delbert Proctor ("Plaintiff") filed his application for DIB on September 5, 2001 (protective filing date), alleging disability as of February 24, 2000, due to back injury, high blood pressure, "breathing problems due to pain," sleeping disorder, and "heart problems" (R. 65, 94). The application was denied initially and on reconsideration (R. 45, 46). Plaintiff requested a hearing, which Administrative Law Judge ("ALJ") Arthur Conover held on January 9, 2004 (R. 398). Plaintiff, represented by counsel, testified along with Vocational Expert Karen White ("VE"). The ALJ rendered a decision on March 25, 2004, finding that Plaintiff was not under a "disability," as

defined in the Social Security Act, at any time through the date of the decision (R. 28). The Appeals Council denied Plaintiff's request for review on September 23, 2004, making the ALJ's decision the final decision of the Commissioner (R. 5).

## II. Statement of Facts

Plaintiff was born on September 23, 1960, and was 43 years old on the date of the ALJ's decision (R. 51, 73). He has a ninth grade education and past work as a mechanic, rig hand, and truck driver (R. 95). He last worked in February 2000 (R. 94).

Plaintiff injured his back at work on July 15, 1998. Dr. Alfredo Velasquez diagnosed lumbar strain with nerve root irritation (R. 262-263). Plaintiff filed a workers' compensation claim but eventually returned to work as a mechanic.

On February 24, 2000, Plaintiff's alleged onset date, he reinjured his back swinging a sledge hammer at work (R. 152). He reported to the emergency room a few days later (R. 198). Marsha L. Bailey, M.D. examined Plaintiff on March 7, 2000, and diagnosed lower back strain with some nerve root inflammation (R. 309). She prescribed Lortab to be used sparingly, and Flexeril.

On March 28, 2000, Plaintiff was seen by Shonda Assaad, M.D. He indicated he was undergoing physical therapy, but his pain was increasing with traction. He also reported pain now radiating down both legs. He rated the pain as seven out of ten. He reported numbness in the left leg and foot. Dr. Assaad diagnosed lumbar back strain with radiculopathy and requested authorization for an MRI (R. 306).

On May 2, 2000, Plaintiff was evaluated by Constantino Amores, M.D., a neurosurgeon. Plaintiff reported diminished feeling to touch and pinprick in the back of his left foot. Dr. Amores noted Plaintiff's MRI showed no evidence of herniation or spinal stenosis. He diagnosed chronic

lumbosacral strain with acute exacerbation, rule out radiculopathy, and recommended conservative, non-surgical treatment with anti-inflammatory agents. He would recommend a work hardening program after a period of recovery. If the pain became intractable and overwhelming, he would recommend a comprehensive pain management program (R. 288).

Plaintiff was evaluated at Corporate Health on May 30, 2000. He reported his back was improving somewhat with physical therapy, but he now had left hip pain, most likely secondary to a change in his body mechanics due to the back pain. Dr. Cathy Funk noted that Plaintiff had gone to see a neurosurgeon instead of an orthopedic surgeon by mistake. She noted positive straight leg raises on the left. She continued Plaintiff on Celebrex, added Elavil for pain, and continued Plaintiff's physical therapy (R. 304).

On July 5, 2000, Plaintiff was seen for a consultative examination by Dr. Luis Loimil. Plaintiff described pain in his tailbone that radiated to his left hip and down his leg. The hip pain was aggravated by wet weather (R. 196). He was 5'11 and weighed 280 pounds. Dr. Loimil diagnosed lumbosacral strain with a question of nerve root involvement. He opined that Plaintiff was disabled from heavy work. Plaintiff described pain despite several weeks of physical therapy. Dr. Loimil recommended an EMG to rule out nerve root involvement and a functional capacity evaluation (R. 195).

On July 25, 2000, Plaintiff was hospitalized with complaints of substernal chest pain. Dr. Jashvantlal Thakkar diagnosed Plaintiff with a non-Q wave myocardial infarction, unstable angina, and persistent chest pain. After a normal electrocardiogram, Plaintiff was discharged with a diagnosis of atypical chest pain (R. 155-156).

On August 15, 2000, Dr. I. Derakhshan of Corporate Health performed the recommended

EMG. It showed severe distal sensory neuropathy. Dr. Derakshan recommended ruling out diabetes (R. 291). A subsequent examination did rule out diabetes (R. 194).

A thallium stress test performed on August 17, 2000, indicated Plaintiff had extremely poor exercise tolerance with marked shortness of breath. His ejection fraction was 47%, which was in the borderline abnormal range (R. 165).

A September 21, 2000, Functional Capacity Evaluation indicated Plaintiff was unable to perform all of the test activities. The evaluator opined Plaintiff put forth a good effort and the test results were valid. The plan was four weeks of work conditioning and then work hardening (R. 193).

Before he started the work hardening program, Plaintiff was referred to a pulmonologist to evaluate his shortness of breath. The pulmonologist noted that Plaintiff had quit smoking after the chest pains in July 2000. He indicated Plaintiff required an extensive evaluation. His main concern at the time, however, was that Plaintiff was "extremely anxious about his symptomology and almost on the verge of a panic attack." The doctor started him on a serotonin reuptake inhibitor to decrease these panic symptoms (R. 311).

Plaintiff's work conditioning and hardening therapy was further delayed when the Workers' Compensation division apparently lost all his paperwork.

As of June 29, 2001, Dr. Loimil stated that Plaintiff's prognosis for recovery was very poor, and indicated Plaintiff had been disabled since February 24, 2000, his alleged onset date (R. 192).

On July 25, 2002, Plaintiff was evaluated by Dr. Arturo Savio at the request of the State agency (R. 202). He weighed 281 pounds. Dr. Sabio diagnosed hypertensive cardiovascular disease, controlled; status post myocardial infarction and angina; degenerative disc disease, lumbar spine; and chronic bronchitis (R. 203).

Plaintiff sought chiropractic treatment on December 3, 2002. On April 9, 2003, his chiropractor reported Plaintiff had improved functionally but his pain levels had changed very little (R. 243-244).

On December 2, 2003, Dr. Carol Christiansen, Plaintiff's family physician, diagnosed major depression and prescribed Effexor (R. 387.)

On January 2, 2004, one month after he was diagnosed with major depression, Plaintiff's doctor noted his medications were effective, but he still had a depressed affect (R. 383).

At the administrative hearing held on January 9, 2004, Plaintiff testified the Effexor seemed to help his depression, but said he still felt bad all the time, tired, and "drug down." He did not feel like doing anything. The depression affected his thinking and caused him to become irritated "pretty fast." (R. 421). Plaintiff testified he had felt depressed "probably for a few months" before his diagnosis, and believed his divorce five months earlier had brought on his depression (R. 427).

### III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's lumbosacral strain with radiculopathy, hypertension, hypertensive cardiovascular disease, obstructive pulmonary disease, and sleep apnea are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal

one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: because of musculoskeletal pain, fatigue, and shortness of breath, he can sit, stand and walk for prolonged periods of time in 30 minute intervals, lift weights of up to 20 pounds, and perform tasks tasks [sic] that do not expose him to extreme temperatures or heights, that require him to climb ladders or walk on unlevel ground, or perform more than occasional amounts of balancing, stooping, climbing, kneeling, crouching, or crawling. Nonexertionally, due to mild to moderate pain, fatigue, and related manifestations, he is limited to repetitive, simple work tasks that do not require extended amounts of attention and concentration.

7. The claimant is unable to perform the exertional requirements of any of his past relevant work (20 CFR § 404.1565).

8. The claimant is 43 years old, or a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

9. The claimant has a limited (ninth-grade) education (20 CFR § 404.1564).

10. According to the testimony of the vocational expert, the claimant's past relevant work provided him with skills transferable to other work (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.19 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include light work as a rental clerk (17,000 regionally and 468,000 nationally); mail clerk (16,500 regionally and 206,750 nationally); and sedentary work as a small engine tender (9,000 regionally and 116,000 nationally).

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(e)).

(R. 27-28).

## IV. DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit held, "Our scope of review is specific and narrow. We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Contentions of the Parties

Plaintiff contends:

1. The ALJ did not consider his mental impairment under proper legal standards; and
2. This matter must be remanded for consideration of new and material evidence.

Defendant contends:

1. Substantial evidence supports the ALJ's finding that Plaintiff's depression was not a severe impairment; and

2. Evidence Plaintiff submitted to this Court does not merit a remand pursuant to sentence six of 42 U.S.C. § 405(g).

### C. Depression

Plaintiff argues: "The Administrative Law Judge did not consider Mr. Proctor's mental impairment under proper legal standards." Defendant argues substantial evidence supports the ALJ's finding that Plaintiff's depression was not a severe impairment.

20 CFR 404.1520 provides for a five-step evaluation to determine if a claimant is disabled. At step two the ALJ must determine whether the claimant has a severe impairment or combination of impairments that has met or is expected to meet the durational requirement of 12 months or more. If the claimant has such a severe impairment or impairments, the ALJ must determine whether the impairment(s) meet or medically equal a listed impairment. Finally, the ALJ must determine whether a claimant's impairment(s) prevent him from doing his past work or other work that exists in significant numbers in the national economy. § 404.1520a provides further guidance specifically for evaluation of mental impairments. § 404.1520a(b) requires the ALJ to first evaluate the symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. If the ALJ determines the claimant has a medically determinable mental impairment, the ALJ must then "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings in accordance with paragraph (e) of this section."

Once the ALJ has determined the claimant has a medically determinable mental impairment, he must then "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of this section and record [his] findings as set out in paragraph (e) of this section." §404.1520a(b)(2). The ALJ is required to "document application of the technique in the decision." Finally:

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitations in each of the functional areas described in paragraph (c) of this section.

Shortly before the Administrative Hearing, Plaintiff's treating physician diagnosed him with Major Depression and prescribed Effexor (R. 387). Plaintiff testified to having symptoms of depression. A review of the ALJ's decision indicates he apparently found Plaintiff's depression was a medically determinable impairment. He did not, however, follow the "special technique" as required by the Regulations. He did not include a specific finding as to the degree of limitations in each of the functional areas.

Further, even if the ALJ correctly determined Plaintiff's depression was not "severe," he was nevertheless required to consider it, as a medically determinable impairment, throughout the remaining steps of the sequential analysis. 42 U.S.C. § 423(d)(2)(B) and 42 U.S.C. § 382(c)(a)(3)(F) provide:

> In determining whether an individual's physical or mental impairment or impairments are of sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments

9

without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process."

(Emphasis added). Here, the ALJ expressly found Plaintiff had severe impairments. He was therefore required to consider Plaintiff's medically determinable mental impairment throughout the decision, even if it was not determined to be severe.

If the ALJ's reason for not including the required technique in his decision was a lack of evidence, he could have sent Plaintiff for a consultative evaluation or recontacted Plaintiff's own treating physician to determine the basis for the diagnosis.

For all the above reasons, the undersigned finds substantial evidence does not support the ALJ's determination regarding Plaintiff's alleged mental impairment.

## New Evidence Submitted to the Court

Having already determined that this matter should be remanded to the Commissioner for further proceedings, the undersigned recommends Plaintiff's Motion for Remand for Consideration of New and Material Evidence be DENIED as MOOT. The undersigned nevertheless feels compelled to note that Plaintiff's counsel had requested additional time from the Appeals Council in order to submit the report of a psychological evaluation for which Plaintiff was scheduled. It appears that by simply waiting an additional month or so, the Appeals Council could have had the evidence the ALJ found lacking.

In fact, Plaintiff underwent the promised psychological evaluation on June 4, 2005, only days after counsel's letter to the Appeals Council (see Plaintiff's Exhibit A). Unfortunately, according to Plaintiff's counsel, she did not receive the report of the examination until October 7, 2004. By

that time, the Appeals Council had rendered its decision (dated September 23, 2004).

Counsel should have requested additional time for the report to be submitted, as she must have been aware that the Appeals Council had given her only 25 days to submit additional evidence. On the other hand, it has been the experience of the undersigned Magistrate Judge, having reviewed hundreds of Social Security cases, that the Appeals Council rarely acts in such a prompt fashion (i.e., within six months of the ALJ's decision).[1] Significantly, the entire length of time from Plaintiff's Administrative Hearing through the Appeals Council decision was only 8 months. It is not unusual, in the undersigned's experience, for the Appeals Council to take in excess of a year to decide an appeal of an ALJ's decision. Although not condoning counsel's inaction in not asking for another extension, the undersigned does not find it entirely unreasonable that she relied on the usual slowness of the Appeals Council, especially considering the fact that counsel had expressly informed the Appeals Council that Plaintiff was scheduled for a psychological evaluation and that the report would likely take some time to be completed.

Because the undersigned recommends this matter be remanded, both parties will be able to submit any evidence they believe is relevant to the issues and time frame involved.

## VI. RECOMMENDED DECISION

For the reasons above stated, the undersigned recommends Defendant's Motion for Summary Judgment be **DENIED**, and Plaintiff's Motion for Judgment on the Pleadings be **GRANTED in part,** by reversing the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent and

---

[1] The undersigned notes in particular a very recent case in which it took the Appeals Council 5 ½ months simply to enter a one-paragraph order allowing a claimant an additional 2 days to file a civil action with this Court.

11

in accord with this Recommendation. The undersigned further recommends Plaintiff's Motion for Remand for Consideration of New and Material Evidence be **DENIED as MOOT**.

Any party may, within ten days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to transmit an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 24 day of October, 2005.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE